UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| CHARLES B. FAULTRY, | No. C 12-3379 PJH (PR) |
| Petitioner, | **ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND GRANTING CERTIFICATE OF APPEALABILITY** |
| vs. | |
| K. ALLISON, Warden, | |
| Respondent. | |

This is a habeas corpus case filed pro se by a state prisoner pursuant to 28 U.S.C. § 2254. The court ordered respondent to show cause why the writ should not be granted. Respondent filed an answer and a memorandum of points and authorities in support of it, and lodged exhibits with the court.  Petitioner then filed a traverse.  For the reasons set out below, the petition is denied.

**BACKGROUND**

A jury found petitioner guilty of two counts of first degree robbery, three counts of second degree robbery, assault with a firearm and related enhancements for personal use and discharge of a firearm and revolver in the commission of the offenses.  Clerk's Transcript ("CT") at 164-73, 177, 246.  He was sentenced to 27 years and eight months in prison.  CT at 244-49.

Petitioner appealed to the California Court of Appeal, raising two claims: 1) the trial court erred in denying his motion for self-representation pursuant to *Faretta v. California*, 422 U.S. 806 (1975); and 2) jury misconduct.  On December 21, 2009, the California Court of Appeal in a two-to-one decision reversed the judgment against petitioner in its entirety

and remanded the case after finding that the trial court had erred in denying petitioner's *Faretta* motion to represent himself. *People v. Faultry*, 2009 WL 4921305 (Cal. App. 1 Dist., 2009).

Respondent filed a petition for review with the California Supreme Court seeking review of the California Court of Appeal's ruling on the *Faretta* claim. Answer, Exh. F. On November 12, 2010, the California Supreme Court ordered the Court of Appeal to vacate its opinion and reconsider the case in light of *People v. Lynch*, 50 Cal. 4th 693 (2010), *cert denied*, 131 S. Ct. 2156 (2011). Answer, Exh. H.

On January 31, 2011, the Court of Appeal issued its opinion after reconsideration and rejected petitioner's *Faretta* and jury misconduct claims and affirmed the judgment against him. *People v. Faultry*, 2011 WL 288023 *1 (Cal. App. 1 Dist., 2011). Petitioner filed a petition for review with the California Supreme Court, which denied the petition on April 13, 2011. Answer, Exhs. J, K. Petitioner then filed this federal habeas petition.

The facts, as described by the California Court of Appeal, are as follows:

Defendant was convicted of a series of robberies committed in San Francisco within the span of a few days in early November of 2005 . . . .

**The Robbery of Said Hasan at the Hilltop Market (Count 5)**
At 12:45 p.m. on November 4, 2005, Said Hasan was working in the Hilltop Market he owned on Broderick Street in San Francisco. A man Hasan had never seen before entered the store and "asked for change for $20." The man left the store after Hasan gave him the change he requested, but returned about 15 minutes later. The man approached the counter with a box of cookies in one hand and a small silver revolver in the other. He pointed the gun at Hasan and demanded "all the money" in the cash register. Hasan gave the man $250 in cash from the cash register, along with ATM receipts, food stamps and checks. The man then directed Hasan to the back of the store. After the man left the store Hasan called the police.

Hasan described the robber as "a Black man," between six feet and six feet, three inches tall, 280 to 300 pounds, 28 to 35 years old, wearing a black beanie over half of his face, and a white T-shirt. He viewed a videotape lineup on November 14, 2005, and selected "number 2," defendant, as "similar to the person, but not 100 percent." Hasan testified at the preliminary hearing in August of 2006, that defendant was "not the guy" who robbed him. At trial, Hasan described defendant as the "same height," but "darker" and "20 pounds heavier" than the robber. He testified: "I cannot say 100 percent, but I have a deep feeling he is not the man who robbed me."

The box of cookies left by the robber on the counter was not touched by anyone until it was processed by a crime scene investigator. A latent fingerprint taken from the cookie box was subsequently identified as a match for defendant's left thumb print.

**The Robberies and Assault with a Firearm of Jong Kook Kim and Chung**
Sook Kim at the Drink Liquor Store (Counts 6 through 8)

Jong Kook Kim (Kim) and his wife Chung Sook Kim owned Drink Liquor, a grocery and liquor store on Second Avenue in San Francisco. Just before 5:00 on the afternoon of November 4, 2005, a large, tall "Black man" appeared in the store, took a Snapple from the refrigerator, and placed it on the counter. He said something that Kim and his wife did not understand, then pulled out a small gun and shot at the floor. Kim told his wife to open the cash register and "give the money" to the man. Mrs. Kim placed all the money from the cash register into a paper bag along with the Snapple, and gave it to the man. The man then walked out of the store, turned left, and headed toward Balboa Street and Third Avenue.

Steven Jue, the owner of an aquarium shop next to Drink Liquor, who was on the street in front of his store talking with a customer, testified that he noticed the "African-American man" walk past him "going westbound" toward Balboa and Third. He described the man as mid-twenties, "five-ten, five-eleven," about 280 pounds, wearing a white T-shirt, black pants, and a black "do-rag on his head."

Kim and his wife followed the man out of the store. They encountered Jue, who characterized them as "very hysterical," and told him they had been robbed. They all watched as the man walked to the corner, then turned around and proceeded to a car parked on the street. Jue testified that the car was a "late '70's Chevy Caprice Classic, bluish-greenish color," with tinted windows and an "out-of-state license plate," the first three numbers of which "were 733." Mrs. Kim asked Jue to remember and "write down" the license number of the car. The man got into the car and drove away.

Kim returned to the store to look for evidence of the gunshot. He discovered a small "piece of metal" on the floor that was not present before the robbery, which he later gave to a police officer.

Kim and his wife subsequently viewed a video lineup: Kim identified defendant as the robber by placing an X on subject number 2; Mrs. Kim "wasn't able to" make an identification. Neither Kim nor his wife identified defendant as the robber at trial, although Mrs. Kim testified that defendant "might be him." Jue identified defendant in the video lineup, at the preliminary hearing, and at trial.

Kim and his wife and Jue were taken to a police vehicle impound yard to separately "look around" and see if they recognized the car driven by the robber. They all recognized and pointed out a blue " '80's Chevy Caprice" with an "out-of-state plate" that read 773LSS that had been towed to the impound lot from the Westside Housing Projects on Post and Broderick after defendant's arrest there. When the Caprice was seized the police found a black "do-rag underneath the seat," a small knife under the driver's seat back rest, and "indicia" related to defendant and his home

address at 2011 Delta View, Bay Point.

**The Robbery of Myles Kilroy (Count 3)**
Myles Kilroy was working as a cab driver for Yellow Cab Company when he received a dispatch at 10:15 a.m. on November 7, 2005, for an address on Ingalls Street in the Bayview Hunters Point area near Candlestick Park. When Kilroy reached Ingalls Street he noticed a man running toward the cab. The man got in the right rear passenger seat of the cab, and asked Kilroy to "go down to the next block and hang a right." After Kilroy made two right turns as directed, the man asked him to stop the cab. Kilroy pulled over to the side of the road in front of a residence. He then turned around and realized that the passenger had pulled out a gun and was pointing it at him. The man ordered Kilroy to hand over his money. Kilroy extracted his billfold from his breast pocket and gave it to the man. Kilroy was also ordered to give the man his wallet, cell phone, and car keys, and he did so. The man returned the wallet and cell phone, "saying, 'I don't want this shit.'" He then walked away, but as he did so he threw the keys to the cab in the street.

Kilroy described the man who robbed him as "African-American," late 20's to early 30's, a "big guy," at least 200 pounds, who wore a black do-rag tied tightly around his head. Three days later, Kilroy viewed a video lineup. He selected subject number 2, defendant, as someone who strongly resembled the "person who robbed" him, and subject number 5, a person who "lightly resembled the person" Kilroy remembered. Kilroy testified in court that defendant "looks a lot like" the robber; he was "fairly certain" of his identification.

**The Robbery of Joel Lipkins (Count 4)**
At 10:50 on the morning of November 7, 2005, cab driver Joel Lipkins arrived at an address on Velasco Street in the Sunnydale Projects in San Francisco to pick up a fare. Lipkins discovered "there was no such address," but a minute later heard a man yell, "Pull around the corner. My wife will be out in a minute." The man then got into the back seat of the cab and directed Lipkins around the corner. Lipkins testified that the man was "Black," 30 to 35 years old, about 6 feet tall, and 300 pounds.

After Lipkins drove around the corner the man "pulled out a gun and said, 'Give me all your money.'" Lipkins reached in his left side shirt pocket "and gave him all of the money." The man also demanded Lipkins's wallet. Lipkins replied that he did not keep money in his wallet. The man "said, 'Okay,'" took the money and got out of the cab. From outside the cab the man told Lipkins, "Give me your keys." Lipkins complied, whereupon the man took the cab keys and threw them down the street. The man then entered an old, maroon or brown "boxy-type car," like an Oldsmobile, Pontiac or Buick, and drove away.

Lipkins viewed a video lineup on November 10, 2005. He placed a mark on "Number 2," defendant, as the man who robbed him. He identified defendant at the preliminary hearing and again at trial as "the one that did it." He had "no question" of the accuracy of his identifications. Lipkins also identified three photographs taken by the automated "FareView" camera system mounted in his cab: one of himself and the robber, another of just the robber, and a third of the robber "with a gun." Lipkins testified that he was positive the photos were accurate and depicted the man who

4

robbed him the morning of November 7, 2005.

**The Arrest of Defendant and the Police Investigation**
Defendant was arrested by plain clothes officers of the San Francisco Police Department on the evening of November 8, 2005, at the Westside Housing Projects on Baker Street in San Francisco.  He was wearing a white "do rag," a white T-shirt, and blue jeans.  Defendant gave the officers his name and a residence address of 2011 Delta View Lane in Bay Point, the same address specified on the registration documents for the blue Chevrolet Caprice found near the location of defendant's arrest.  He was subsequently questioned at the robbery detail interview room.  When defendant was shown a photograph taken by the FareView camera system in Lipkins's cab, he imprudently remarked, "That's me."  An examination of the records of a cell phone seized from defendant revealed that numerous calls were made from that phone to the Yellow Cab Company on the morning of October 29, 2005, FN4 and again on the morning of the robberies of cab drivers Lipkins and Kilroy.

*Faultry*, 2011 WL 288023 *1-4 (footnotes omitted).

## STANDARD OF REVIEW

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).  The first prong applies both to questions of law and to mixed questions of law and fact, *see Williams (Terry) v. Taylor*, 529 U.S. 362, 407-09 (2000), while the second prong applies to decisions based on factual determinations, *see Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams (Terry)*, 529 U.S. at 412-13.  A state court decision is an "unreasonable application of" Supreme Court authority, falling under the second clause of § 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but

5

"unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, the application must be "objectively unreasonable" to support granting the writ. *Id.* at 409.

Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *See Miller-El*, 537 U.S. at 340; *see also Torres v. Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000).

## DISCUSSION

Petitioner's sole ground for federal habeas relief is that he was denied his Sixth Amendment right to represent himself when the trial court denied his *Faretta* motion.

**I.    *Faretta* Motion**

**Factual Background**

The crimes in this case were committed in November 2005, and the information was filed on August 23, 2006. *Faultry*, 2011 WL 288023 *5. Trial dates were repeatedly set, but numerous continuances were granted at the request of both the prosecution and defense. *Id.* Petitioner made a motion pursuant to *People v. Marsden*, 2 Cal. 3d 118 (1970), to relieve his appointed counsel that was denied on November 17, 2006. *Faultry*, at *5; CT at 26-27. Due to petitioner's complaints about his appointed counsel, the public defender's office decided to change his counsel in April 2007 to Mark Jacobs, rather than face a *Faretta* motion or another *Marsden* motion. *Faultry*, at *5.

The California Court of Appeal discussed the relevant procedural background for this claim:

> By January 15, 2008, a date set for trial, defense counsel again requested a continuance due to a scheduling conflict with another trial and the need to present defense motions. The case was continued to the next day.
>
> On January 16, 2008, defendant appeared, still represented by Jacobs, and through counsel moved for release on his own recognizance and for severance of charges. A possible negotiated disposition was also

6

discussed, which included another pending robbery case charged against defendant in Contra Costa County. Defendant then stated: "I'd like to file a *Faretta* motion so I could represent myself." Defendant explained that he "wasn't too happy" with his two appointed attorneys, and wanted "a better deal" of 20 years with the potential for "halftime" served based on sentence credits. He also wanted the sentence to include a pending Contra Costa County felony where the defendant faced an additional punishment of 25 years for robbery and the personal discharge of a firearm during the robbery, a result beyond the control of the San Francisco trial court. Defendant added that he faced "a lot of time," and would rather study and present the case himself. He felt this way especially because he could not receive the package "deal" he wanted to resolve all his matters. He also requested his "own investigator" to "look into" the case and "run the errands" necessary to discover information, as well as additional "access to the law library." When the court inquired as to the time necessary for defendant to prepare for trial, he replied "at least four or five months." The court asked defendant for the reason for the delay in seeking self-representation. Defendant responded that as the case began "getting close to going to trial" he realized that he was "still not happy with a different person representing" him, and felt he could better represent himself.

Defense counsel advised the court that the other case to which he was assigned was a "no-time-waiver" trial "on calendar" the next day, and would take "no more than about two weeks" to complete. Counsel announced that he was prepared to begin trial in the present case immediately upon the conclusion of his other trial.

The trial court acknowledged to defendant that he had a "constitutional right" to represent himself, but denied the *Faretta* motion for lack of timeliness. The court expressed concern with the "enormous delay" in the case that was "already more than two years old," and was "ready to start trial within a matter of weeks." Defendant asserted that he was not aware of his right to represent himself until "a month ago," and was "not trying to inconvenience the court." Defense counsel interjected that he had not advised defendant of his right of self-representation. The court found, in light of the pertinent factors articulated in "the *Windham* case," FN6 including the "disruption and delay" that would attend according defendant the right to represent himself, that the "motion is untimely."

   FN6. *People v. Windham* (1977) 19 Cal.3d 121, 137 Cal.Rptr. 8, 560 P.2d 1187 (*Windham*).

The court proposed to hear a severance motion on January 23d, then "put the matter over until February 4th" to start trial if defense counsel was available.

*Faultry*, 2011 WL 288023 *5-6.

Petitioner raised his *Faretta* motion on January 16, 2008, and the court was next in session on January 23, 2008, to hear a motion to sever the counts. Reporter's Transcript (RT), Vol. 3 at 45. Petitioner was not present as he had

7

been falling in his holding cell and his counsel requested medical and psychological evaluations. *Id.* On February 7, 2008, the court was still waiting for the psychological evaluations and the court also informed the parties that due to scheduling conflicts other trials would have to occur first. RT, Vol. 4 at 45-46. With respect to the wait for the psychological examination, petitioner's counsel stated:

> . . . . but right now [petitioner] is experiencing extreme amount of anxiety . . . . I want to make sure that he's understanding what's going on, that he's competent to proceed.
>
> I'm not willing to declare a doubt at this time because I want to make sure - - I want to get an expert - - at least a professional to look at him.

RT, Vol. 4 at 47. The case was adjourned until April 2, 2008, and a psychiatric evaluation that issued on March 12, 2008, stated that petitioner while diagnosed with antisocial personality disorder did not suffer from a serious mental illness, was not being medicated and would be seen by jail psychiatric staff. CT at 69.

On April 2, 2008, the court indicated that another trial was still occurring and petitioner's trial counsel was going to be filing at least one more motion, so the parties should not anticipate having any witnesses available before May 5. RT, Vol. 6 at 56. A motion to exclude evidence was heard in late April, and trial started May 6. RT Vol. 8 at 62, CT at 107.

**California Court of Appeal Opinion**

The California Court of Appeal discussed the relevant state and federal law and found the trial court did not err in denying the *Faretta* motion:

> We are presented in this appeal with the issue of timeliness. FN7 "[T]he timeliness of one's assertion of *Faretta* rights is critical." (*People v. Halvorsen* (2007) 42 Cal.4th 379, 433, 64 Cal.Rptr.3d 721, 165 P.3d 512.) "If a request for self-representation is unequivocally asserted within a reasonable time before the commencement of the trial, and if the assertion is voluntarily made with an appreciation of the risks involved, the trial court has no discretion to deny it." (*People v. Bloom* (1989) 48 Cal.3d 1194, 1219, 259 Cal.Rptr. 669, 774 P.2d 698; *see also People v. Halvorsen, supra*, at p. 434, 64 Cal.Rptr.3d 721, 165 P.3d 512; *People v. Dent* (2003) 30 Cal.4th 213, 217, 132 Cal.Rptr.2d 527, 65 P.3d 1286.) "'When a motion for self-representation is not made in a timely fashion prior to trial, self-representation no longer is a

8

**United States District Court**
For the Northern District of California

matter of right but is subject to the trial court's discretion.' [Citation.] In exercising this discretion, the trial court should consider factors such as "'the quality of counsel's representation of the defendant, the defendant's prior proclivity to substitute counsel, the reasons for the request, the length and stage of the proceedings, and the disruption or delay which might reasonably be expected to follow the granting of such a motion.'" [Citations.]" (*People v. Jenkins* (2000) 22 Cal.4th 900, 959, 95 Cal.Rptr.2d 377, 997 P.2d 1044; *see also Windham*, *supra*, 19 Cal.3d 121, 128, 137 Cal.Rptr. 8, 560 P.2d 1187; *People v. Lawley* (2002) 27 Cal.4th 102, 149, 115 Cal.Rptr.2d 614, 38 P.3d 461.) "'The "reasonable time" requirement is intended to prevent the defendant from misusing the motion to unjustifiably delay trial or obstruct the orderly administration of justice.' [Citation.]" (*People v. Percelle* (2005) 126 Cal.App.4th 164, 175, 23 Cal.Rptr.3d 731.)

> FN7. The evidence clearly shows that defendant's *Faretta* motion was unequivocal, and the Attorney General does not argue otherwise. Upon finding the request untimely, the trial court did not reach the competence and voluntariness elements of the right of self-representation. In determining the issue of timeliness, the trial court's decision is based on the facts as they appear at the time of the hearing on the motion, not on what develops subsequently in the case. (*People v. Moore* (1988) 47 Cal.3d 63, 80, 252 Cal.Rptr. 494, 762 P.2d 1218.)

Whether a *Faretta* motion has been made a reasonable time prior to the commencement of trial presents a calculation "*Windham* left unresolved." (*People v. White*, *supra*, 9 Cal.App.4th 1062, 1071, 12 Cal.Rptr.2d 122; *see also id.* at p. 1072, 12 Cal.Rptr.2d 122.) Recently, the court in *Lynch* elucidated and expanded upon the rudimentary standard of a reasonable time prior to commencement of trial, and for the first time definitively articulated the principles and factors that must be evaluated to determine the timeliness of a defendant's assertion of the right of self-representation. FN8 *Lynch* dispensed with a more inflexible examination of timeliness in favor of scrutiny of the particular circumstances associated with the defendant's Faretta motion.

> FN8. The court in *Lynch* noted that the United States Supreme Court "has never delineated when a motion may be denied as untimely. Nor has this court fixed any definitive time before trial at which a motion for self-representation is considered untimely, or articulated factors a trial court may consider in determining whether a self-representation motion was filed a reasonable time before trial." (*Lynch*, *supra*, 50 Cal.4th 693, 722, 114 Cal.Rptr.3d 63, 237 P.3d 416.)

As a starting point, the court in *Lynch* observed that "*Faretta* nowhere announced a rigid formula for determining timeliness without regard to the circumstances of the particular case." (*Lynch*, *supra*, 50 Cal.4th 693, 724, 114 Cal.Rptr.3d 63, 237 P.3d 416.) Rather, "timeliness for purposes of *Faretta* is based not on a fixed and arbitrary point in time, but upon consideration of the totality of the circumstances that exist in the case at the time the self-representation motion is made." (*Ibid.*) The court declared "that a trial court may consider the totality of the circumstances in determining whether a defendant's pretrial motion for self-representation is timely. Thus, a trial court properly considers not only the time between the motion and the scheduled trial date, but also such factors as whether trial counsel is ready to

proceed to trial, the number of witnesses and the reluctance or availability of crucial trial witnesses, the complexity of the case, any ongoing pretrial proceedings, and whether the defendant had earlier opportunities to assert his right of self-representation." (*Id.* at p. 726.)

. . .

Moreover, and critically for purposes of our examination of timeliness in the case before us, the court in *Lynch* also considered the delay associated with granting the motion. Under the more rigid "reasonable time prior to commencement of trial" standard in place under the former law as stated in *Windham*, the delay that would result from affording the defendant the right to self-representation was not recognized as a legitimate consideration if the *Faretta* motion was otherwise timely. [Footnote omitted] The court in *Lynch* pointed out, however, that when moving for self-representation the "defendant did not dispute that he would need time to investigate and prepare, and replied both 'Yeah' and 'not sure' when asked if he was 'talking about months' of time to do so. Indeed, he said he needed time to review the discovery and other materials before he could tell the court how much additional time he would require, expressed confusion that 'everyone beside[s] myself is ... ready as of now ... to go to trial,' and characterized his self-representation motion as 'vacat[ing]' his recent withdrawal of his time waiver." (*Lynch*, *supra*, 50 Cal.4th 693, 728, 114 Cal.Rptr.3d 63, 237 P.3d 416, italics omitted.) The court explained: "The reasonable import of these comments is that if the self-representation motion had been granted, defendant would have required an undetermined amount of time to investigate and prepare for trial. A trial court may properly consider the delay inherently caused by such uncertainty in evaluating timeliness." (*Ibid.*)

The court in *Windham* also cautioned that the "imposition of a 'reasonable time' requirement should not be and, indeed, must not be used as a means of limiting a defendant's constitutional right of self-representation." (*Windham*, *supra*, 19 Cal.3d 121, 128, fn. 5, 137 Cal.Rptr. 8, 560 P.2d 1187, italics omitted; *see also People v. Miller* (2007) 153 Cal.App.4th 1015, 1021, 62 Cal.Rptr.3d 900.) The court declared, however, that when "a defendant merely seeks to delay the orderly processes of justice, a trial court is not required to grant a request for self-representation without any ability to test the request by a reasonable standard." (Windh*am, supra*, at p. 128, fn. 5, 137 Cal.Rptr. 8, 560 P.2d 1187; *see also Miller*, *supra*, at ¶. 1021-1022, 62 Cal.Rptr.3d 900.) We noted in our prior opinion that nothing in the record suggests defendant acted for the purpose of obstructing or delaying the proceedings, and the trial court neither engaged in a colloquy designed to inquire into defendant's motivations nor made a finding on the record regarding the issue of obstruction.

. . .

Here, the time between the initiation of the proceedings and the *Faretta* motion was also quite protracted. The proceedings languished after the crimes were committed in November of 2005 and the information was filed in August of 2006, with many trial dates set and continued. Defendant's *Marsden* motion had been denied, but he was subsequently granted substitute counsel when he voiced further complaints with his representation. As in *Lynch*, although no firm date for the beginning of the trial was set, the case had been assigned out for trial "forthwith" before the

*Faretta* motion was made on January 16, 2008. Defendant sought to represent himself the day after the tentative trial date was set. The trial date in the present case was provisional-contingent upon determination of a few motions, along with availability of a courtroom and defense counsel-but *Lynch* instructs us that an indefinite future trial date does not inevitably render a *Faretta* motion timely. In *Lynch*, a date for trial was not definitively scheduled; trial was at least five weeks away, dependent upon the resolution of pretrial motions and other matters. For purposes of assessing timeliness under *Lynch*, the factual context in the case before us is comparable: over two years lapsed from the commission of the crimes to defendant's invocation of his right to self-representation; the parties were prepared to try the case after extensive pretrial procedures; a certain trial date was not set, but commencement of trial was positively contemplated upon consideration of the severance motion, receipt of witness lists, and the conclusion of defense counsel's no-time-waiver case. All of the contingencies to commencement of trial were expected to be resolved within a shorter time span than the court was presented with in *Lynch*.

Defendant also did not furnish a reason that adequately justified his delay in pursuing the *Faretta* motion. He had been represented by his current attorney for many months and was aware of his right to seek substitute counsel-having exercised it in the past. He gave no reason why he waited to express displeasure with his counsel's representation. Defendant merely conveyed that he "wasn't too happy" with his appointed attorneys, wanted "a better deal," and faced "a lot of time," so he preferred to present the case himself. His only articulated basis for the delay in seeking to represent himself was lack of awareness of the right of self-representation, not any recent development in the case that unexpectedly compelled him to dispense with counsel. And although he became aware of his right to self-representation a month before, he waited until January 16 to make his Faretta motion, when he was faced with the realization that the case would not settle on terms advantageous to him and trial was forthcoming. The reasons defendant offered to support his *Faretta* motion, while perhaps not feeble, were hardly more persuasive to us than those found deficient in *Lynch*, and did not excuse defendant's tardiness in moving to represent himself. And like the defendant in *Lynch*, he cannot escape the "responsibility for timely invoking his right to self-representation." (*Lynch, supra*, 50 Cal.4th 693, 727, 114 Cal.Rptr.3d 63, 237 P.3d 416.)

In addition, the case against defendant was multifaceted and elaborate. Defendant was charged with numerous and very serious offenses: three counts of first degree robbery, three counts of second degree robbery, and two counts of assault with a firearm, along with gun use enhancements. The case involved at least four different incidents, five different victims, and many additional witnesses. Some of the victims did not speak English, so interpreters were required. The prosecution had already waited over two years from the commission of the offenses to present the case. The record also illustrates that the court as well as the parties were not only ready but anxious to proceed. The concerns of the victims and prosecution to obtain a speedy trial cannot be ignored. (*Lynch, supra*, 50 Cal.4th 693, 727, 114 Cal.Rptr.3d 63, 237 P.3d 416.)

Finally, a postponement of the commencement of the trial, of an unknown but quite extended duration, would have been necessitated by granting

11

defendant the right to represent himself.  Following the decision in *Lynch*, the "delay inherently caused" by the amount of time a defendant needs to investigate and prepare for trial may be balanced against the defendant's right to counsel "in evaluating timeliness." (*Lynch, supra*, 50 Cal.4th 693, 728, 114 Cal.Rptr.3d 63, 237 P.3d 416.)  When defendant made his *Faretta* motion the prosecution was ready to proceed to trial immediately. Defense counsel represented that he too was prepared to begin trial directly upon the conclusion of a "no-time-waiver" trial in another case, approximately two weeks.  In contrast, when defendant was asked for the contemplated duration of the continuance he required to prepare for trial, he replied "at least four or five months."  He also requested an investigator to conduct discovery and "run the errands" for him, as well as additional "access to the law library."  Thus, the disruption of the proceedings necessitated by affording defendant the right to self-representation, which far exceeded the projected trial date, heavily disfavors a finding that the *Faretta* motion was made within a reasonable time prior to commencement of trial, particularly when we consider that the case had already endured significant delays but was finally nearing completion.  (*Id.* at p. 727.)

Under the authority of *Lynch*, which is both valuable in its expression of governing legal principles and factually very apposite in the appeal before us, we find that defendant's motion for self-representation was untimely. The trial court therefore had discretion to deny the motion, and did not abuse that discretion by doing so. (*Lynch, supra*, 50 Cal.4th 693, 728, 114 Cal.Rptr.3d 63, 237 P.3d 416.)

*Faultry*, 2011 WL 288023 *7-11.

**Legal Standard**

A criminal defendant has a Sixth Amendment right to self-representation. *Faretta v. California*, 422 U.S. 806, 832 (1975).   But a defendant's decision to represent himself and waive the right to counsel must be unequivocal, knowing and intelligent, timely, and not for purposes of securing delay. *Id.* at 835; *United States v. Arlt*, 41 F.3d 516, 519 (9th Cir. 1994); *Adams v. Carroll*, 875 F.2d 1441, 1444 & n.3 (9th Cir. 1989).

The *Faretta* language describing Faretta's request to represent himself as having been made "weeks before trial," 422 U.S. at 835, is part of the holding of the Court, and thus is "clearly established Federal law, as determined by the Supreme Court of the United States," for purposes of relief under the current version of 28 U.S.C § 2254(d).  *Moore v. Calderon*, 108 F.3d 261, 265 (9th Cir. 1997).  After *Moore*, we know that *Faretta* clearly established some timing element, but we do not know the precise contours of that element beyond the fact that requests made "weeks before trial" are timely.  *Marshall v. Taylor*, 395

1   F.3d 1058, 1061 (9th Cir. 2005).[1]  Because the Supreme Court has not clearly established
2   when a *Faretta* request is untimely, other courts, including state courts, are free to do so,
3   as long as they comport with the Supreme Court's holding that a request made "weeks
4   before trial" is timely.  *Id.* (holding that California court was not "contrary to" clearly
5   established Supreme Court law under 28 U.S.C. § 2254(d) when it found that petitioner's
6   *Faretta* request on the first day of trial before jury selection untimely).

7      A request to represent oneself "need not be granted if it is intended merely as a
8   tactic for delay."  *United States v. Flewitt*, 874 F.2d 669, 674 (9th Cir. 1989).  A court may
9   consider (1) the effect of any resulting delay on the proceedings, and (2) events preceding
10  the motion, to determine whether they were consistent with a good faith assertion of the
11  *Faretta* right and whether the defendant could reasonably be expected to have made the
12  motion at an earlier time.  *Avila v. Roe*, 298 F.3d 750, 753-54 (9th Cir. 2002) (remanding for
13  evidentiary hearing, where district court failed to consider first factor and failed to give any
14  weight to state appellate court's findings regarding second factor); *see also Hirschfield v.*
15  *Payne*, 420 F.3d 922, 927 (9th Cir. 2005) (holding that it was not unreasonable for the state
16  court of appeal to find that petitioner's motion for self-representation was made in order to
17  further delay the proceedings where it was made the day before trial, he had moved to
18  substitute counsel on four previous occasions, and he admitted that every time he asked
19  for a new attorney it was close to trial).

20  **Analysis**

21      This case was sent to the state court trial department on January 15, 2008, for trial.
22  On that day, petitioner's trial counsel indicated a continuance was needed due to a
23  scheduling conflict and to present defense motions.  On January 16, 2008, the prosecution

---

[1] In *Moore*, the Ninth Circuit discussed a bright-line rule for the timeliness of *Faretta* requests: a request is timely if made before the jury is empaneled, unless it is shown to be a tactic to secure delay.  108 F.3d at 264-65.  However, the Ninth Circuit has not applied *Moore's* bright-line rule as "clearly established" Supreme Court law for the purposes of 28 U.S.C. § 2254(d).  *See Marshall*, 395 F.3d at 1059, 1062 (state court's determination that petitioner's *Faretta* request made on the day of trial, but before jury selection, was untimely, was not "contrary to" clearly established federal law under 28 U.S.C. § 2254(d)).

13

stated it would be ready to proceed with trial, as petitioner was not amenable to the offered plea bargain based on the amount of prison time proposed and its failure to resolve a different arrest in another county. It was at this time that petitioner raised the *Faretta* motion. The trial court denied the motion, and the case was set to begin approximately on February 4, 2008, though based on the schedule of trial counsel it was not certain that trial would begin that day.

The state court found that the *Faretta* motion was properly denied as untimely. The issue for this court is whether the state court opinion was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States. Ultimately this court must determine if petitioner's *Faretta* request was timely or untimely with respect to the "weeks before trial" period.

However, this issue is complicated as "Supreme Court precedent regarding the permissible timing of a *Faretta* request is scarce. No Supreme Court case has directly addressed the timing of a request for self-representation." *Marshall*, 395 F.3d at 1060. As noted above, the state courts are free to determine when a *Faretta* request is untimely as long as they comport with the Supreme Court's holding that a request made "weeks before trial" is timely. *Id.*, at 1061.

"If Supreme Court cases 'give no clear answer to the question presented,' the state court's decision cannot be an unreasonable application of clearly established federal law." *Ponce v. Felker*, 606 F.3d 596, 604 (9th Cir. 2010) (quoting *Wright v. Van Patten*, 552 U.S. 120, 126 (2008)). Petitioner bears the burden of demonstrating the objectively unreasonable nature of the state court decision in light of controlling Supreme Court authority. *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002).[2] Specifically, petitioner "must show that the state court's ruling on the claim being presented in federal court was so

---

[2] Extrapolations of settled law to unique situations will not qualify as clearly established. *See e.g., Carey v. Musladin*, 549 U.S. 70, 76-77 (2006) (established law not permitting state sponsored practices to inject bias into a criminal proceeding by compelling a defendant to wear prison clothing or by unnecessary showing of uniformed guards does not qualify as clearly established law when spectators' conduct is the alleged cause of bias injection).

14

lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 131 S. Ct. 770, 786-87 (2011).

The California Court of Appeal's opinion, the last reasoned state court opinion, delved into great detail discussing why the request was untimely, analyzing *People v. Lynch* and *People v. Windham*. Petitioner has failed to demonstrate that the state court opinion was unreasonable in light of the exacting standard described above. S*ee generally Randle v. California*, 142 Fed. Appx. 977 (9th Cir. 2005) (state court did not err in denying as untimely a *Farretta* motion made two weeks prior to the beginning of trial, and employing the balancing of factors identified in *Windham* was not an unreasonable application of established federal law).

The denial of the *Faretta* motion occurred one day after trial was supposed to begin and nineteen days before the next day the trial was set to begin. While this could be considered as "weeks before trial," the California Court of Appeal also considered the other evidence surrounding the request, which is permissible. *Avila*, 298 F.3d at 753-54 (a court may consider (1) the effect of any resulting delay on the proceedings, and (2) events preceding the motion, to determine whether they were consistent with a good faith assertion of the *Faretta* right and whether the defendant could reasonably be expected to have made the motion at an earlier time.) Petitioner had previously raised a *Marsden* motion, had received new counsel and did not describe why he was dissatisfied with counsel other than he was not offered a satisfactory plea offer. Petitioner also admitted that he had known for a month that he could raise a *Faretta* motion yet he did not raise the motion until trial was imminent. The trial court believed trial to be imminent; however, petitioner was requesting four or five months to prepare in addition to requesting an investigator to conduct discovery and run errands for him.

In support of its decision, the California Court of Appeal cited to the following passage from *People v. Lynch*, 50 Cal. 4th 693 (2010), "timeliness for purposes of *Faretta* is based not on a fixed and arbitrary point in time, but upon consideration of the totality of

15

the circumstances that exist in the case at the time the self-representation motion is made."
*Lynch,* at 724.  Based on the scarcity of Supreme Court authority regarding the timeliness
of a *Faretta* motion, this court cannot find the state court decision to be objectively
unreasonable.

Petitioner's main concerns were the lack of a suitable plea offer and that trial was
approaching.  During the hearing, petitioner stated:

> I would ask [the DA's office] for a better deal maybe if we could talk to the DA about taking the 20 years with halftime for pleading to a different charge to where it carry a halftime, and maybe they can drop the other charges.

RT, Vol. 3 at 34.  The trial court informed petitioner that that specific request had been
made by his trial counsel, but the prosecutor could not comply.  *Id.*  Petitioner then stated:

> I wasn't happy with the job [my prior attorney] was doing and when I had got this [current attorney], I thought it would probably be better.  And just over the time of me having him and over the time of me thinking and *it's getting close to going to trial*, I was starting to realize that I'm still not happy with a different person representing me.  I feel that I could represent myself better if I have to take this to trial.

RT, Vol. 3 at 36 (emphasis added).

The denial of the *Faretta* motion was not unreasonable based on petitioner's
statements that after many delays and various attorneys he wanted to represent himself
and would require several months to prepare, all because he was not offered an
advantageous plea deal and the trial date was approaching.  *See United States v. Valdez*,
540 Fed. Appx. 751 (9th Cir. 2013) (district court did not err in denying *Faretta* motion
because defendant sought to represent himself after a two-year delay and in part because
he was dissatisfied with the government's plea deal).  Petitioner also acknowledged to the
trial court that he had known about his ability to raise a *Faretta* motion for one month.

Petitioner argues that trial did not begin for several months after the denial of the
*Faretta* motion.  While this is accurate and troubling, the trial court, when denying the
*Faretta* motion, did not know that trial would be delayed for several months.  While much of
this delay was caused by court scheduling conflicts, there were medical and psychological
issues related to petitioner that needed to be addressed as well.  After it became clear that

16

trial would be delayed for several months, petitioner did not again assert a *Faretta* motion.

This court finds that the state court's determination that petitioner's *Faretta* motion was untimely was not an unreasonable application of Supreme Court authority. The claim is therefore denied.

## II.     Appealability

The federal rules governing habeas cases brought by state prisoners require a district court that denies a habeas petition to grant or deny a certificate of appealability ("COA") in the ruling. *See* Rule 11(a), Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254 (effective December 1, 2009).

To obtain a COA, petitioner must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Section 2253(c)(3) requires a court granting a COA to indicate which issues satisfy the COA standard. Here, the court finds that the sole claim in the petition regarding the denial of the *Faretta* motion meets the above standard and accordingly GRANTS the COA. *See generally Miller-El*, 537 U.S. at 327.

Accordingly, the clerk shall forward the file, including a copy of this order, to the Court of Appeals. *See* Fed. R. App. P. 22(b); *United States v. Asrar*, 116 F.3d 1268, 1270 (9th Cir. 1997). Petitioner is cautioned that the court's ruling on the certificate of appealability does not relieve him of the obligation to file a timely notice of appeal if he wishes to appeal.

## CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is **DENIED**.

A Certificate of Appealability is **GRANTED**. *See* Rule11(a) of the Rules Governing Section 2254 Cases.

The clerk shall close the file.

17

**IT IS SO ORDERED.**

Dated: April 7, 2014.

⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
PHYLLIS J. HAMILTON
United States District Judge

G:\PRO-SE\PJH\HC.12\Faultry3379.hc.wpd